UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21544-CIV-GAYLES

**EDWIN SALAZAR,**
        Plaintiff,

    v.

**NORWEGIAN CRUISE LINE HOLDINGS,
LTD., and NCL (BAHAMAS) LTD.,**
        Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants Norwegian Cruise Line Holdings, Ltd. ("Holdings"), and NCL (Bahamas) Ltd.'s ("Norwegian") Motion for Summary Judgment [ECF No. 25]. In this maritime personal injury action, Plaintiff Edwin Salazar brings claims of negligence against the Defendants for injuries he allegedly sustained when he slipped and fell on liquid that had accumulated on the dance floor of a disco onboard the Norwegian *Sky*. The Court has carefully considered the briefs, the record, and the applicable law. For the reasons that follow, the Defendants' motion shall be granted.

**I.   BACKGROUND**

The facts in this case are largely undisputed. Salazar and his wife Soraya Ramos were passengers on a cruise on the *Sky* that departed from Miami, Florida, on April 28, 2014. The *Sky* is operated by Defendant Norwegian, while Defendant Holdings neither owns, manages, operates, maintains, impacts, or otherwise controls the *Sky*. Two or three days into the voyage, Salazar and Ramos attended the "captain's dinner." Salazar testified that he had consumed three or four beers prior to the dinner and had consumed two glasses of wine at the dinner, which ended at approximately 10:30 p.m. At approximately 11:15 p.m., Salazar and Ramos went to one of the ship's

discos. Salazar was wearing sandals that night, and his right sandal had no tread on it. Upon arriving, Salazar went to the bar and purchased a round of beers for himself, Ramos, Ramos's friend Monica Robles, and two other passengers whom they had met at the captain's dinner. The group sat at a table conversing for approximately twenty minutes. Ramos and Robles attest that throughout the night they saw passengers dancing with drinks in their hand on the dance floor. Ramos Aff. ¶ 10; Robles Aff. ¶ 10. At one point, Salazar got up from the table, planning to request a song from the DJ—whose booth was across the dance floor, approximately twenty feet away from his table—and then visit the restroom.

The lighting in the disco was generally "dark," but green and red strobe lights flashed on and off intermittently. Pl.'s Dep. at 50:17, 51:9-10. Salazar had no issue navigating the other tables and chairs placed between his table and the dance floor. As he walked toward the DJ booth, his eyes were fixed on the booth, and he was not looking at his feet or at the dance floor. According to his deposition testimony, when the strobe lights were on, the lighting was bright enough that he could have seen his feet or the dance floor had he looked at them:

> Q: I am not asking if you did see your feet. I am not asking if you actually looked down at your feet. I am asking if the light was sufficient to allow you to see your feet if you looked in that direction.
> A: Logically, yes, I would see. At the time, even though the lights was [sic] going on and off, at the time the light was on, if I had looked towards my feet, I would have seen it.
> Q: But as you walked across the dance floor, you were looking at the deejay booth?
> A: I had fixed my eyes on one point, and that was the deejay booth where the cabin is.
> Q: You didn't look at the floor or your feet at all, as you walked across the dance floor?
> A: No.

*Id.* at 72:6-25 (objection omitted). When Salazar was approximately a foot-and-a-half from the DJ booth, he slipped on liquid on the floor and fell, injuring his left shoulder. Salazar testified

2

that did not know what the liquid was, how it got there, or how long it had been there before he fell. *Id.* at 73:1-12. He also testified that he did not know of a Norwegian crew member who was aware that there was liquid on the floor before he fell. *Id.* at 73:13-16. Salazar felt the liquid and testified that it was "very cold" to the touch. *Id.* at 97:6. He remained on the floor for about five minutes after his fall, at which point the lights were turned on and a crew member came to clean up the liquid. He was then taken to the infirmary and was examined by the ship's doctor.

Salazar filed a two-count complaint on April 24, 2015, claiming negligence against Holdings and against Norwegian. His claims are based on the theory that the Defendants failed to exercise reasonable care for the safety of their passengers under the circumstances and failure to warn of dangers known to the carrier by committing several acts or omissions. The Defendants now move for summary judgment.

## II.   LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "Where the material

facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, — F.3d —, 2016 WL 659222, at *9 (11th Cir. Feb. 18, 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

**III.   DISCUSSION**

   **A.   *Holdings Is Entitled to Summary Judgment***

As an initial matter, Holdings argues that it is entitled to summary judgment because it does not own, manage, operate, or control the Norwegian *Sky* and is therefore not a proper party to this lawsuit. Salazar does not dispute this argument. Consequently, summary judgment shall be granted in favor of Holdings.

   **B.   *Norwegian Is Entitled to Summary Judgment***

Norwegian argues that it is entitled to summary judgment for five reasons: (1) the record contains no evidence that it had notice of the alleged risk-creating condition; (2) it had no duty to warn of a condition that was open and obvious; (3) the record contains no evidence that it violated industry standards, statutes, or regulations, or that it negligently maintained the area; (4) Salazar has failed to establish causation; and (5) Salazar has failed to establish that he has sustained any damages. Salazar opposes the motion, arguing that each of these issues should be determined by a jury, not by the Court.

Maritime law governs the liability of a cruise ship for a passenger's slip and fall. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Under maritime law, "[a] carrier

4

by sea . . . is not liable to passengers as an insurer, but only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). In other words, "the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). To prevail on his negligence claim, then, Salazar must prove that (1) Norwegian had a duty to protect him from a particular injury, *i.e.*, his slip and fall; (2) Norwegian breached that duty; (3) the breach actually and proximately caused his injury; and (4) he suffered actual harm. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014). "The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action." *Taiariol v. MSC Crociere, S.A.*, No. 15-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment.")).

### 1. The Spilled Liquid Was an Open and Obvious Condition

A cruise ship operator's duty to warn extends to known dangers that are neither apparent nor obvious to passengers. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013). Conversely, there is no duty to warn passengers of open and obvious dangers, *i.e.*, those conditions that should be obvious by the ordinary use of one's senses. *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). Whether a danger is open and obvious is determined from an objective, rather than a subjective, point of view. *Lugo v. Carnival Corp.*, — F. Supp. 3d —, 2015 WL 9583280, at *4 (S.D. Fla. Dec. 31, 2015); *see also John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) ("Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed.").

"Drawing from the well of human experience leads one to the realization" that liquid may be spilled on a dance floor when that dance floor is populated by intoxicated, dancing cruise ship passengers. *Taiariol*, 2016 WL 1428942, at *4 n.6. Under these circumstances, spilled liquid on a dance floor is "open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight." *Lugo*, 2015 WL 9583280, at *4. This alone is sufficient to foreclose this claim.

Salazar attempts to rely on *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090 (S.D. Fla. 2014), in arguing against a finding that the liquid was an open and obvious condition. There, the plaintiff's slip and fall as she stepped from a carpeted area to a tile floor was caused either by contamination of the floor by a foreign substance or inappropriate slipperiness of the ceramic tiles. She testified that while she had not noticed any foreign substance on the ground where the slip occurred, the floor must have been contaminated in some fashion by virtue of the slip. In denying the defendant's motion for summary judgment, Judge Bloom concluded that there were no circumstances to suggest that the condition of the floor was open and obvious to an individual using their normal faculties because "the possible presence of condensation on the floor or the lack of slip resistance on the tiles may not have been conspicuous to the naked eye." *Id.* at 1095. In Judge Bloom's view, "anomalous conditions in otherwise safe areas, such as a slippery substance on a walkway, generally are not open and obvious." *Merideth*, 49 F. Supp. 3d at 1095 (citing *Magazine v. Royal Caribbean Cruises, Ltd.*, No. 12-23431, 2014 WL 1274130, at *6 (S.D. Fla. Mar. 27, 2014)). In a contrasting case, *Frasca v. NCL (Bahamas) Ltd.*, Judge Goodman found the fact that the weather outside was described as "rainy/misty" provided adequate warning that the exterior deck would be wet and slick "because it is obvious to a reasonable person." No. 12-20662, 2014 WL 1385806, at *6-7 (S.D. Fla. Apr. 9, 2014), *appeal filed*, No. 14-11955 (11th Cir. May 2, 2014).

The facts of this case are closer to those at issue in *Frasca* than those at issue in *Merideth*. The fact that passengers were drinking and dancing provided adequate warning that the dance floor had the potential to be slick because the possibility that drinks might be spilled by patrons of various levels of intoxication is obvious to a reasonable person. Moreover, a spilled drink on the dance floor of a cruise discotheque after midnight is not an anomalous condition.

Finally, the Court notes Salazar's testimony that, when the strobe lights were on, he would have seen the liquid had he looked at the floor. Pl.'s Dep. at 72:6-25. Although this subjective testimony is irrelevant to the ultimate determination of whether the danger was open and obvious, it does inform the conclusion that a reasonable person under these circumstances, through the use of his senses, could see when the strobe lights were on that liquid had accumulated on the dance floor. The Court finds that the condition was open and obvious and thus Norwegian had no duty to warn of its existence. Consequently, summary judgment in favor of Norwegian shall be granted.

### 2.     Alternatively, Salazar Has Failed to Establish that Norwegian Had Actual or Constructive Notice of the Spilled Liquid

Assuming *arguendo* that the risk-creating condition was not open and obvious, Norwegian's liability thus turns on whether it had notice—either actual or constructive—of the condition. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (stating that the standard of ordinary reasonable care under the circumstances "requires . . . that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure"). Neither party argues that Norwegian had actual notice of the liquid, so the Court analyzes only whether Salazar has established that Norwegian had constructive notice.

"Courts routinely grant summary judgment in a defendant's favor when a plaintiff fails to adduce evidence on the issue of notice." *Taiariol*, 2016 WL 1428942, at *4 (citing, *e.g.*, *Lipkin v.*

*Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) ("Because Plaintiff has failed to cite any evidence in the record showing that [Defendant] had actual or constructive notice of the risk-creating condition alleged in the complaint . . . summary judgment in favor of [Defendant] is appropriate in this matter.")). Furthermore, "[c]ourts have also found at this stage of disposition [that] 'mere implication of actual or constructive notice is insufficient to survive summary judgment.'" *Id.* at *5 (quoting *Lipkin*, 93 F. Supp. 3d at 1323). A plaintiff must show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." *Cohen*, 945 F. Supp. 2d at 1357 (citation and internal quotation marks omitted).

Salazar has not shown the requisite specific facts (or any facts at all) in this regard. The pertinent record evidence is as follows: Salazar testified that he did not know what the liquid was, he did not know how it got there, he did not know how long it had been there before he fell, and he did not know of a Norwegian crew member who was aware of the presence of the liquid on the floor prior to his fall. Pl.'s Dep. at 73:1-16. The liquid was, according to Salazar, "very cold," *id.* at 97:6, and thus it could not have been on the floor for more than a short time prior to the accident. He has adduced no evidence to establish that the risk-creating condition existed long enough to put Norwegian on notice of its existence and to allow it the opportunity to remedy the condition. "Without specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action, [a] case need not proceed to a jury" and summary judgment in favor of the defendant is proper. *Adams v. Carnival Corp.*, No. 08-22465, 2009 WL 4907547, at *4 (S.D. Fla. Sept. 29, 2009) (citation and internal quotation marks omitted).[1]

---

[1] *Grayson v. Carnival Cruise Lines, Inc.*, 576 So. 2d 417 (Fla. 3d DCA 1991) (per curiam), upon which Salazar relies, is inapposite. There, the plaintiff observed crew members working on the ship's pool and had seen water splashing over the pool's sides. A few minutes later, he walked down a flight of stairs that descended to the pool deck and immediately slipped and fell on a puddle of water measuring one-to-two inches deep and six feet by twelve feet in diameter. The court reversed the trial court's grant of summary judgment in favor of the cruise ship operator,

In an attempt to withstand summary judgment, Salazar provides affidavits from his wife and Robles, each of which states that people on the dance floor were drinking and dancing, staff members and crew members in attendance were also drinking and socializing, and no one from the Norwegian staff or crew warned passengers about or advised them against bringing drinks on the dance floor. *See* Ramos Aff. ¶¶ 9-12; Robles Aff. ¶¶ 10-11. Based on these statements, Salazar argues that ***because*** people on the dance floor were drinking and dancing, and ***because*** some staff and crew members were also drinking and socializing, Norwegian had to have known that people would spill their drinks on the dance floor.[2]

This argument is a nonstarter. A plaintiff "cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question." *Weiner v. Carnival Cruise Lines*, No. 11-22516, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012). In *Weiner*, the plaintiff alleged that he slipped on a foreign substance on the tile floor outside of a coffee shop on the promenade deck of a ship. The plaintiff offered the testimony of an expert who provided an opinion that it was foreseeable spills would occur on the promenade deck because several bars and cafes were situated there and the flooring material was slippery and dangerous when wet. He opined that there was "no excuse" for the cruise ship operator to have a floor in that location "that's dangerously slippery when wet because you know it's going to get wet." Judge Scola summarily rejected this argument. *See id.* (citing, *e.g.*, *Bencomo v. Costa Crociere, S.P.A.*, No. 10-62437, ECF No. 18, at 4-5 (S.D. Fla. Nov. 14, 2011) ("[A]n argument that wet decks

---

crediting most heavily the evidence of the size of the puddle in concluding that a jury question existed as to whether the puddle existed for ample time to charge the company with constructive notice of the hazard's existence.

It stands to reason that the court found that the evidence—a puddle of water measuring approximately eight-to-sixteen thousand cubic inches in volume had collected at the base of the staircase to the pool deck prior to the plaintiff's accident—was sufficient to present to a jury the question of whether the cruise ship operator had constructive notice of the puddle. But a condition of such a large scale is not at issue here, so Salazar's reliance on *Grayson* is misplaced. The limited size and limited duration of this spill, with no other evidence, weighs heavily against a finding of constructive notice on the part of Norwegian.

[2] Notably, Salazar has not identified any Norwegian employee by name who saw passengers drinking on the dance floor.

9

occurred regularly and thus were 'foreseeable' is not sufficient to create constructive notice."), *aff'd*, 476 F. App'x 232 (11th Cir. 2012) (per curiam)).

The facts and arguments of *Weiner* are mirrored here. Salazar argues that because the patrons of the disco were drinking on the dance floor, because there was a possibility those patrons could spill their drinks, and because Norwegian employees did not warn them of the dangers of spills attendant to drinking on the dance floor, the spill that caused Salazar's slip and fall should have been foreseeable to Norwegian. But "'maritime law does not support a stand-alone claim based on' a cruise line's alleged duty to take actions to reduce or eliminate foreseeable risks before they manifest, where such claim is 'unconnected to [the passenger's] specific accident.'" *Id.* (quoting *Stewart-Patterson v. Celebrity Cruises, Inc.*, No. 12-20902, 2012 WL 2979032, at *3 (S.D. Fla. July 20, 2012)). And even viewing Salazar's claim through this lens of general foreseeability, he has provided no evidence that accidents of the sort he experienced "occurred with enough frequency to impute constructive notice of a dangerous condition" to Norwegian. *Id.* at *5 (citation and internal quotation marks omitted); *see also Peer v. Home Depot U.S.A., Inc.*, No. 11-14356, 2012 WL 1453573, at *3 (S.D. Fla. Apr. 26, 2012) (explaining that while "plaintiff can establish constructive notice if the condition occurs with regularity and thus is foreseeable," there was no evidence in that case "that such a hazard occurred with enough frequency to impute constructive notice"). In fact, he has provided no evidence at all of any accidents of the sort he experienced in the location he experienced it (or any similar location). Constructive notice cannot be based on mere theory.[3]

---

[3] The Court recognizes that, to some, the conclusion that the spill in question was an open and obvious condition might appear incongruous with the conclusion that Norwegian did not have constructive notice, especially given that the first conclusion is supported by the fact that a reasonable person could see patrons holding drinks on the dance floor and the second conclusion gives no weight to the allegations that Norwegian employees could see patrons holding drinks on the dance floor. But the law governing these two analyses each requires different considerations based on the same facts. To determine whether a condition is open and obvious to a plaintiff, the Court must consider what a reasonable person can observe through the use of his senses. Conversely, to impute

Finally, to the extent that Salazar argues that Norwegian should have known that a dangerous condition existed simply because the dance floor conditions led to his accident, that argument must also be rejected as improper speculation. "The mere fact that an accident occurred does not give rise to a presumption of a dangerous condition." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006); *see also Wish v. MSC Crociere S.A.*, No. 07-60980, 2008 WL 5137149, at *3 (S.D. Fla. Nov. 24, 2008) ("The mere fact that one slips and falls on a floor does not constitute evidence of negligence, nor does the fact that a floor was slick make the owner liable.").

In sum, the Court concludes that Salazar has failed to adduce any evidence on the issue of whether Norwegian had actual or constructive notice of the risk-creating condition. And because he has so failed, summary judgment in favor of Norwegian on this ground is similarly warranted.[4]

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Motion for Summary Judgment [ECF No. 25] is **GRANTED**. Final judgment shall be issued separately.

This action is **CLOSED** and all pending motions are **DENIED** as moot. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of May, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

constructive notice to a defendant, the Court must find evidence that the purported defect was detectable with sufficient time to allow for corrective action or evidence that similar accidents occurred under similar circumstances. *Compare Lugo*, 2015 WL 9583280, at *4, *with Weiner*, 2012 WL 5199604, at *4.

[4] Because the Court has determined that Norwegian is entitled to summary judgment on either open-and-obvious or notice grounds, analysis of Norwegian's remaining arguments is unnecessary.